# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

NANCY COLE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

RUST-OLEUM CORPORATION,

Defendant.

Case No.: 1:21-CV-0272 (BKS/DJS)

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Plaintiff Nancy Cole (hereinafter "Plaintiff"), by and through the undersigned counsel, brings this action against Defendant Rust-Oleum Corporation ("Rust-Oleum" or "Defendant"), individually and on behalf of all others similarly situated, and alleges as follows:

### NATURE OF THE CASE

1.  This is a consumer class action lawsuit brought by Plaintiff on behalf of purchasers of Rust-Oleum's acrylic coating products marketed as Rust-Oleum Restore Deck Start Wood Primer, Restore 2X One Coat Solid Stain, and Restore 4X Deck Coat (collectively, the "Restore Products").[1]

2.  Outdoor wooden decks, concrete patios, and similar structures require periodic upkeep due to being exposed to the elements and wear-and-tear from surface contact. Such upkeep typically consists of staining, painting, or use of other coatings and protective or restorative applications.

3.  Rust-Oleum markets and sells these types of products under the brand "Restore" for use by consumers seeking to repair and revitalize their existing decking, patios, and other

---

[1] The list of specific Restore Products involved in this lawsuit is subject to modification as Plaintiff develops the claims in this litigation during discovery.

outdoor structures. The Restore Products are acrylic coatings that purport to be high-quality surfacing and re-surfacing products. Rust-Oleum aggressively markets these products to consumers as superior, durable, and lower-maintenance products capable of resisting the elements.

4.      The Restore Products are defective and prone to failure. Contrary to Rust-Oleum's advertising and representations, the Restore Products are plagued by flaws that cause them to fail to adhere properly to underlying surfaces. Despite proper product application, the Restore Products prematurely degrade, chip, peel, flake, strip, and otherwise deteriorate, failing to provide the advertised protection to the decks, patios, and other structures to which these products are applied.

5.      The various product failures experienced by consumers who purchased Restore Products are at odds with Rust-Oleum's marketing representations, including promises and representations it makes regarding product quality and performance directly on the product label

6.      Images of Rust-Oleum's product labels for the Restore Products are below:

 



7.      As seen above, Rust-Oleum touts that its Deck Start Wood Primer "works on weathered & worn wood"; "simplifies prep & promotes topcoat adhesion"; and that it "works with any solid topcoat." Regarding its Restore 2X product, Rust-Oleum claims that the product is a "one coat application"; is "algae and mildew resistant"; "extends the life of your deck"; and is a "superior" product. As for its Restore 4X products, Rust-Oleum touts that it "restores the beauty of moderately worn decks & patios"; provides "enhanced durability"; provides "ultimate weather resistance"; is "barefoot friendly"; and "fills hairline cracks."

8.      These representations are advertised right on the labels for the Restore Products themselves, which consumers are uniformly exposed to at the time of purchasing cans of Restore Products in-store, (e.g., at the Home Depot, Lowe's, or other hardware and home goods stores). Similar or identical product descriptions, labeling, and advertising representations are and were present on the webpages where consumers purchased the Restore Products, uniformly exposing them to Rust-Oleum's misstatements and omissions.

9.    Rust-Oleum made numerous other representations on its Restore Products labels, on its website, and elsewhere in product literature regarding the high performance and quality of its products. Unfortunately for Plaintiff and consumers, these representations are untrue. As alleged in more detail below, Plaintiff experienced product failure despite proper application of the Restore Products.

10.    As consumers have now discovered, the Restore Products do not live up to Rust-Oleum's promises and affirmative representations. Rather than providing years of protection, the Restore Products deteriorate in a short time period. Consumers also soon discover that the defective Restore Products requires removal and replacement of the product coat in its entirety, since it fails to protect the deck itself. Thus, instead of ending the cycle of repainting and replacing, the Restore Products hasten it.

11.    Making matters worse, when consumers complain about failed Restore Products, they report that Rust-Oleum will only refund the purchase price or replace defective Restore Products with more defective Restore Products.

12.    The allegations in this lawsuit are nothing new and should come as no surprise to Rust-Oleum. Indeed, its other Restore products were the subject of a publicly settled class action that asserted similar allegations. *See In Re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation*, No. 1:15-cv-1364, MDL No. 2602 (N.D. Ill.).

13.    Rust-Oleum knew its Restore Products are defective and prone to failure, yet it marketed and sold them to thousands upon thousands of unsuspecting consumers, causing those consumers to suffer extensive damage to their decks and other structures, and to incur monetary damage.

14.    Based on previous allegations regarding Rust-Oleum's other similar Restore products, its pre-sale testing of the Restore Products, and consumer complaints about product failure, Rust-Oleum knew (or should have known) that the Restore Products suffer from a defect prior to placing the products on the market for sale to consumers, but it omitted, concealed, and

otherwise failed to disclose this material information, which it intended Plaintiff and other consumers to rely upon in deciding to purchase their Restore Products.

15.     Despite knowing that the Restore Products are flawed and prone to failure, Rust-Oleum continued to manufacture, market, sell the Restore Products to the public while making false representations about the Restore Products' quality, durability, and other characteristics, and omitting the truth about these products.

16.     As a result of Rust-Oleum's conduct, Plaintiff and members of the Class (defined below) have incurred substantial costs relating to their decks and other outdoor surfaces, have experienced property damage to their structures, and have otherwise been injured. Due to the flaws in the Restore Products, Class members will continue to expend considerable costs and time in attempts to repair the problems. Many likely will end up having to pay for a total replacement of their decks and other structures at some point.

17.     This class action seeks compensatory and punitive damages, injunctive and declaratory relief, and other relief as a result of Rust-Oleum's violations of state consumer protection laws, breaches of warranties, negligent misrepresentations and fraudulent concealment, and violations of other laws.

## THE PARTIES

**Plaintiff**

18.     Plaintiff Nancy Cole is an adult residing in Schodack Landing, New York.

**Defendant**

19.     Defendant Rust-Oleum Corporation is an Illinois corporation, with its corporate headquarters located in Vernon Hills, Illinois. Rust-Oleum is owned by, and is a subsidiary of, RPM International, Inc.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the amount in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00),

and greater than two-thirds of the Class members reside in states other than the state in which Defendant is a citizen.

21.     This Court has personal jurisdiction over Defendant because Defendant is authorized to do business and is conducting substantial business throughout the United States, including in New York; Defendant has specifically marketed and sold the Restore Products in the in New York; Defendant has sufficient minimum contacts with the various states of the United States, including New York; and/or Defendant sufficiently avails itself of the markets of the various states of the United States, including New York, through the promotion, sales, and marketing of Restore Products in New York, to render the exercise of jurisdiction by this Court permissible.

22.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District; Defendant's misconduct alleged herein occurred in this District; Defendant regularly conducts and transacts business in this District and is therefore subject to personal jurisdiction in this District; and Plaintiff resides in this District.

## FACTUAL ALLEGATIONS

### A.     Overview of the Restore Products and Residential Coatings

23.     Rust-Oleum is a leading manufacturer and seller of protective paints and coatings for home and industrial use in the United States. Rust-Oleum is a flagship brand of RPM International, Inc., which is Rust-Oleum's parent company. Rust-Oleum designs, manufactures, markets, advertises, warrants, and sells a variety of deck and other surface coatings, including paints, stains, and resurfacers.

24.     As is known in the coatings industry, consumers purchasing wood and concrete coating products for their homes want products that will withstand harsh weather conditions but maintain their aesthetic appeal while lasting for a long time. With a large variety of wood and concrete surface coating products available in the marketplace, manufacturers must innovate to distinguish themselves from their competition.

25.     Outdoor wooden decks, docks, concrete patios, and similar structures typically require upkeep as they are exposed to the elements and to surface contact. Traditionally, that upkeep would have required application of a paint or stain on a yearly or other periodic basis, and then eventual replacement of the structure entirely.

26.     In recent years, acrylic coatings have come to the market such that homeowners now have the option of applying these "resurfacers"—a thicker, longer lasting coating than paint or stain. Resurfacers are used to extend the life of the surface by repairing splinters, filling cracks, and coating the deck to make it look revitalized or like new. Because resurfacers offer the promise of extending the life of a surface and avoid the hassle of traditional upkeep and/or the great expense and effort of completely replacing a structure altogether, these products are substantially more expensive than regular paints and stains.

27.     Rust-Oleum's Restore brand is one of the numerous brands of surfacing and resurfacing products currently on the market.

28.     Rust-Oleum Restore Deck Start Wood Primer is a water-based acrylic coating that, according to Rust-Oleum, is intended for use on weathered, worn or previously coated wood decks, docks and exterior wood furniture.[2] Restore Deck Start Wood Primer is a primer product, intended to be applied to surfaces to prime for application of a top coating.

29.     Rust-Oleum Restore 2X is a water-based polyurethane modified acrylic coating which, according to Rust-Oleum, is designed to resurface decks, docks, patios, and walkways.[3]

---

[2] RUST-OLEUM, *Restore Deck Start Wood Primer,* https://www.rustoleum.com/~/media/DigitalEncyclopedia/Documents/RustoleumUSA/TDS/English/CBG/Restore/RST-16_Restore_Deck_Start_Wood_Primer_TDS.ashx (last visited Feb. 25, 2021).

[3] RUST-OLEUM, *Restore 2x One Coat Solid Stain,* https://www.rustoleum.com/~/media/DigitalEncyclopedia/Documents/RustoleumUSA/TDS/English/CBG/Restore/RST-08_Restore_2X_One_Coat_Solid_Stain_TDS.ashx (last visited Feb. 25, 2021).

30.     Rust-Oleum Restore 4X is a "high build" water-based acrylic coating which, according to Rust-Oleum, is designed to resurface aged wood and concrete decks and other surfaces.[4]

**B.     Rust-Oleum's Marketing of Restore Products**

31.     Rust-Oleum promotes its Restore Products as being innovative and of high quality. On its website, Rust-Oleum claims that it offers "some of the most . . . durable . . . products in the industry" and that "[i]f you've got a surface you need to protect . . . you've come to the right place. We have a coating for every challenge."[5]

32.     To distinguish itself in the marketplace, Rust-Oleum touts—on Restore Product labels, product literature and technical data, on the websites where the Restore Products are sold, and elsewhere—the Restore Products' durability and long-lasting, low maintenance qualities.

33.     Rust-Oleum marketed the Restore Products as a better alternative to using traditional paints and stains, or to replacing worn and old decks, porches, patios and other structures altogether.

34.     Indeed, a key aspect of its marketing efforts is in the name of its brand— "Restore"—which conveys to consumers that the product is actually capable of restoring patios, decks, and other outdoor wood and concrete surfaces, so that consumers do not have to incur the great expense of replacing those structures.

35.     Rust-Oleum aggressively marketed the purported durability and quality of the Restore Products.

36.     Rust-Oleum made all of the following representations regarding Restore Deck Start Wood Primer on its product labeling and technical data sheets for that product:

---

[4] RUST-OLEUM, *Restore 4x Deck Coat,*
https://www.rustoleum.com/~/media/DigitalEncyclopedia/Documents/RustoleumUSA/TDS/English/CBG/Restore/RST-07_Restore_4X_Deck_Coat_TDS.ashx (last visited Feb. 25, 2021).

[5] RUST-OLEUM, *Rust-Oleum's History,* https://www.rustoleum.com/about-rust-oleum/our-history (last visited Feb. 23, 2021).

- "simplifies prep & promotes topcoat adhesion";

- "ideal for: wood decks, fences, siding, furniture & more";

- "for use on weathered, worn or previously coated wood decks, docks and exterior wood furniture";

- "works with any solid topcoat";

- "works on weathered & worn wood."[6]

37.     A photograph of a pail of Restore Deck Start Wood Primer is below, and contains numerous of these representations:



38.     Rust-Oleum made all of the following representations regarding Restore 2X One Coat Solid Stain on its product labeling and technical data sheets for that product:

- "one coat application";

---

[6]RUST-OLEUM, *Restore Deck Start Wood Primer,*
https://www.rustoleum.com/~/media/DigitalEncyclopedia/Documents/RustoleumUSA/TDS/Engl
ish/CBG/Restore/RST-16_Restore_Deck_Start_Wood_Primer_TDS.ashx (last visited Feb. 25,
2021).

- "algae and mildew resistant";

- "ideal for: wood decks, fences, siding, furniture & more";

- "extends the life of your deck";

- "superior";

- "designed to resurface wood decks, docks, concrete patios and walkways";

- "extend[s] the life of deck and patio surfaces";

- "superior" or "excellent water repellency."[7]

39.    A photograph of a pail of Restore 2X One Coat Solid Stain is below, and contains numerous of these representations:



40.    Rust-Oleum made all of the following representations regarding Restore 4X Deck Coat on its product labeling and technical data sheets for that product:

---

[7]RUST-OLEUM, *Restore 2x One Coat Solid Stain,*
https://www.rustoleum.com/~/media/DigitalEncyclopedia/Documents/RustoleumUSA/TDS/English/CBG/Restore/RST-08_Restore_2X_One_Coat_Solid_Stain_TDS.ashx (last visited Feb. 25, 2021).

- "restores the beauty of moderately worn decks & patios";

- "enhanced durability";

- "barefoot friendly";

-  "ultimate weather resistance";

- "fills hairline cracks";

- "high build";

- "designed to resurface aged wood and concrete decks, patios, and walkways";

- "high build finish provide[s] slip resistance and can bridge over or fill small cracks, checks, nail holes, or other minor surface defects."[8]

41.    A photograph of a pail of Restore 4X Deck Coat is below, and contains numerous of these representations:



42.    In other advertising, Rust-Oleum further touts the quality of its Restore Products. In a video on Rust-Oleum's YouTube page, it claims its Restore Products are "groundbreaking

---

[8]RUST-OLEUM, *Restore 4x Deck Coat,* https://www.rustoleum.com/~/media/DigitalEncyclopedia/Documents/RustoleumUSA/TDS/Engl ish/CBG/Restore/RST-07_Restore_4X_Deck_Coat_TDS.ashx (last visited Feb. 25, 2021).

deck coating products that are engineered to add years to the life of your deck." The video refers to Rust-Oleum 4X as a "superior product" capable of "resurface[ing] almost any wood or composite deck"; capable of "leaving [decks] protected against moisture and damaging effects of the sun."[9]

43.    Rust-Oleum claims Restore 4X was formulated for decks that need to be "refreshed" due to being "weathered." It claims Restore 4X facelifts these decks as it "coats the deck surface and fills the hairline cracks, beautifying and protecting [decks] for years to come."[10]

44.    The various websites where consumers purchase the Restore Products contained the same or similar statements and representations regarding the Restore Products. For example, on The Home Depot's website, the following description for Restore 4X Deck Coat is provided:

Product Overview

Restore 4X Deck Coat is a water based problem solving coating, formulated to make light repairs and is 4X thicker than ordinary paint. It beautifies and protects old previously coated wood, bare wood, broom swept concrete and most synthetic decking with proper surface preparation. 4X is ideal for wood and composite decking, concrete docks and more.

- Superior coverage

- Long lasting protection

- Conceals hairline cracks

- Outlasts typical deck stains

- Barefoot friendly

- For horizontal and vertical surfaces

- Covers 400 sq. ft., two coats required[11]

---

[9] Rust-Oleum, *Rust-Oleum Restore 4x and Rust-Oleum Restore 10x,* YOUTUBE (June 20, 2014), https://www.youtube.com/watch?v=ZozauvRFuhM (last visited Feb. 25, 2021).

[10] *Id*.

[11] THE HOME DEPOT, *5 Gal. Gray Exterior Deck Coat*, https://www.homedepot.com/p/Rust-Oleum-Restore-5-gal-4X-Gray-Deck-Coat-41528/204981352?MERCH=REC-_-PIPHorizontal1_rr-_-204958468-_-%7B%7BproductId%7D%7D-_-N (last visited Feb. 25, 2021).

45.     Consumers paid a premium for the Restore Products. A one-gallon pale of Restore Deck Start Wood Primer retails for approximately $38; a one-gallon pale of Restore 2X retails for approximately $34; and a one-gallon pale of Restore 4X retails for approximately $34.

46.     The technical data sheets for the Restore Products indicate that one gallon of Restore Deck Start Wood Primer purports to cover up to 450 square feet and only one coat is required; one gallon of Restore 2X purports to cover up to 250 square feet and only one coat is required; and one gallon of Restore 4X purports to cover up to 80 square feet with two coats necessary.[12]

**C.      Defendant Falsely Markets the Characteristics and Quality of Restore Products While Omitting the Truth About the Products**

47.     As identified above, Rust-Oleum prominently advertises and markets the purported high quality and durability of its Restore Products, including directly on product labeling.

48.     Restore Product labels all build on the same themes present in online advertising and in product literature: that the Restore Products are low maintenance, high quality, and provide lasting results so that consumers do not have to replace their decks or other structures. Defendant specifically advertise that Restore Products have a "high build finish" and "enhanced durability" to resist cracking and peeling, and that the products, when applied properly, fill cracks and other wear and tear on decks and other similar surfaces, revitalizing those surfaces.

49.     Rust-Oleum advertises that the Restore Products were long-lasting and reliable, leading reasonable consumers to believe that the Restore Products are premier and superior

---

[12] RUST-OLEUM, *Restore Deck Start Wood Primer*,
https://www.rustoleum.com/~/media/DigitalEncyclopedia/Documents/RustoleumUSA/TDS/English/CBG/Restore/RST-16_Restore_Deck_Start_Wood_Primer_TDS.ashx (last visited Feb. 25, 2021);

RUST-OLEUM, *Restore 2x One Coat Solid Stain,*
https://www.rustoleum.com/~/media/DigitalEncyclopedia/Documents/RustoleumUSA/TDS/English/CBG/Restore/RST-08_Restore_2X_One_Coat_Solid_Stain_TDS.ashx (last visited Feb. 25, 2021);

RUST-OLEUM, *Restore 4x Deck Coat,*
https://www.rustoleum.com/~/media/DigitalEncyclopedia/Documents/RustoleumUSA/TDS/English/CBG/Restore/RST-07_Restore_4X_Deck_Coat_TDS.ashx (last visited Feb. 25, 2021).

products, and Rust-Oleum has charged and continues to charge consumers premium prices for Restore Products upon these pretenses, among others alleged herein.

50.     When consumers purchase the Restore Products—whether at Home Depot or Lowe's locations, online, or elsewhere—they are uniformly exposed to and see Rust-Oleum's representations regarding the Restore Products' characteristics, which is visible on all Restore Products labeling (and in other in-store advertising).

51.     As discussed *supra*, when consumers purchase Restore Products online, e.g., through The Home Depot's website, they are also uniformly exposed to the same representations and advertising concerning the Restore Products

52.     The purpose of Defendant's advertising and marketing of Restore Products, and dissemination of advertising materials regarding Restore Products, e.g., long-lasting, durable, provides superior coverage, etc., could only be to persuade consumers that its Restore Products possess these qualities and are functional with the ability to act as a weather barrier for many years while making decks and other surfaces look like new or "Restore[d]."

53.     Rust-Oleum's guarantees, promises, and other representations about its Restore Products induced Plaintiff and other customers into purchasing the products and lead consumers to believe that the Restore Products are long-lasting and that Rust-Oleum stands behind its advertising and representations.

54.     However, the Restore Products do not live up to these promises. Rust-Oleum's representations about the quality, durability, longevity, and other characteristics of the Restore Products are instead false and materially misleading.

55.     Rust-Oleum is aware and had actual or constructive notice that the Restore Products are of inferior quality and susceptible to failure shortly after application, and that the Restore Products do not, in fact, provide lasting results and enhanced durability, even when applied properly in compliance with the product instructions.

56.     Restore Products routinely crack, chip, peel, strip, and otherwise fail or degrade, and they do so in weather conditions that the products are advertised as capable of withstanding.

57.     Furthermore, despite Rust-Oleum's representations to the contrary, the Restore Products do not successfully protect and revitalize decks and other surfaces to which the products are applied, as consumers routinely report that the Restore Products do not seal their structures and permits moisture intrusion, often leading to mildew and degradation of the underlying structure.

58.     Despite knowledge that the Restore Products are flawed, Rust-Oleum continued to market them as top-of-the-line, high-quality products, while masking and failing to disclose the products' inferiority.

59.     Rust-Oleum knowingly and intentionally concealed and failed to disclose— notwithstanding statements on its websites, brochures, advertisements, product labels, and elsewhere—that the Restore Products often fail shortly months after proper application, which is inconsistent with the advertised "long lasting protection" these products purport to provide. Indeed, the fact that the Restore Products deteriorate at such a fast rate and will continue to deteriorate quickly demonstrates a lack of durability and resiliency.

60.     Defendant also made numerous material omissions in relevant advertisements and literature, and uniformly withheld important information relating to the design, reliability, and performance the Restore Products.

61.     Purchasers of the Restore Products made and make purchasing decisions based upon the information presented by Rust-Oleum, including on its website, in marketing literature, advertisements, commercials, product labels, and warranties.

62.     Rust-Oleum had notice of the deficiencies described herein and has been routinely notified by customers that the Restore Products do not function as advertised.

63.     Indeed, this is not the first time Rust-Oleum has been sued regarding the defective nature and inferiority of its Restore brand. Different products marketed and sold by Rust-Oleum under the "Restore" brand were previously the subject of a well-known class action lawsuit that asserted similar allegations regarding product failures in those Restore products. *See In Re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation*, No. 1:15-cv-1364,

MDL No. 2602 (N.D. Ill.). This lawsuit also put Rust-Oleum on notice that its Restore Products are flawed and result in product failure.

64.     Rust-Oleum made each of the above-described assertions, statements, representations, and warranties with the intent and purpose of inducing consumers to purchase and apply Restore Products on structures throughout the United States. However, it knew that these misrepresentations were not true and that the Restore Products would not function as promised.

65.     Had Rust-Oleum not withheld and omitted material information about the design, reliability, and performance of the Restore Products, Plaintiff and the members of the Class would not have purchased them, or would have paid considerably less for them than they did.

**D.      Internet Complaints About Restore Products**

66.     Plaintiff's circumstances are not an isolated incident. Indeed, the internet is replete with consumer complaints about the low quality and premature failure of the Restore Products. The following represents a small sampling of numerous internet postings by disappointed and aggrieved purchasers of Restore Products (all sic and emphasis added):

---

(Restore 4X)

★★★★★ 1 out of 5 stars.
Frank981
11 months ago
Worst product ever!
I would like to warn everyone of this product's inferior quality! I wish I had never bought this for my deck! The **parts that have not peeled off on their own now have to be removed before the entire deck rots as the stain holds in the moisture where it still is on the deck and won't let it dry.** Stays wet! Beware. I would NOT never recommend it or ever use this product on anything.[13]

---

<hr>

[13] Frank981, Comment to *Rust-Oleum Restore 4x Deck Cover, 5-Gallon,* TRUEVALUE, https://www.truevalue.com/restore-4x-deck-cover-5-gal (last visited Feb. 25, 2021).

(Restore 4X)

**it peeled 1st year! had to repaint**
**October 17, 2019**

it **peeled 1st year**! had to repaint[14]

---

(Restore 2X)

Applied this product ~1 year ago following the manufacture's recommended wood preparation instructions and Restore Deck Start Primer. At first the deck looked great **but after a year the entire deck is peeling and needs to be redone.[15]**

---

(Restore 2X)

**Applied as instructions said**. Cleaned deck prior to applying and used primer as suggested. Looked wonderful on my old deck at first **but after one year it is peeling and looks AWFUL**. The primer is intact but **Restore 2X is peeling in numerous places on 36 x14 ft deck. Much too expensive to do again. Very disappointed in this product**[16]

---

(Restore products, generally)

Don't use this product at all. Worst stuff I have ever used. **Did not last one year and it starts to peel off**. I am refinishing my deck this year by using a belt sander for the small area that has not peeled off.

---

[14] DONALD, Comment to *5 gal. 4X Gray Deck Coat*, THE HOME DEPOT (Oct. 17, 2019), https://www.homedepot.com/p/Rust-Oleum-Restore-5-gal-4X-Gray-Deck-Coat-41528/204981352?MERCH=REC-_-PIPHorizontal1_rr-_-204958468-_-%7B%7BproductId%7D%7D-_-N (last visited Feb. 25, 2021).

[15] FlagHomeowner, Comment to *1gal. 2X Cool Touch Timberline Deck Stain,* THE HOME DEPOT (May 30, 2017), https://www.homedepot.com/p/reviews/Rust-Oleum-Restore-1-gal-2X-Cool-Touch-Timberline-Deck-Stain-286831/205614394/3?reviewsRating=2&sort=Most-helpful (last visited Feb. 25, 2021).

[16] Deb, Comment to *1 gal. 2X Cool Touch Timberline Deck Stain,* THE HOME DEPOT (Oct. 29, 2017), https://www.homedepot.com/p/reviews/Rust-Oleum-Restore-1-gal-2X-Cool-Touch-Timberline-Deck-Stain-286831/205614394/3?reviewsRating=2&sort=Most-helpful (last visited Feb. 25, 2021).

**I also have to replace several boards that have rotted through**. Will not use this product or anything they make again.[17]

---

(Restore products, generally)

We put the Restore product on our deck after letting our Yellowwood construction weather and dry for about a year and a half. It was to serve 2 purposes. The first yo protect our new deck. The second to make it slip proof for my husband who had polio as a child and wears a brace. It was great for purpose number 2. As far as protecting our deck, no, Seven years after installing our deck we **have already had ti replace numerous boards and more need it. The boards seem to rot from underneath. What a waste!**[18]

---

(Restore 4X)

I went to Ace Hardware store and purchased 1 gallon of Restore 10X and one gallon of **Restore 4X deck stain for $60.00.** Date of purchase 8/16/2020. My husband and daughter worked for two days, one day of prepping the deck and the entire next day applying the stain to our deck. I am enclosing pictures of the results which are devastating. **The deck feels rough and sandy and brittle. You can not walk on it with bare feet. We don't know what to do. I can't believe that this product is still on the shelf and we were unaware of the lawsuit.**[19]

---

[17] Herb, Comment to *Class Action Lawsuit against Rust-Oleum (Rock Solid) Deck Restore,* DECKSTAINHELP.COM (Feb. 14, 2021), https://www.deckstainhelp.com/class-action-lawsuit-against-rust-oleum-deck-restore/ (last visited Feb. 25, 2021).

[18] Jean Carrell, Comment to *Class Action Lawsuit against Rust-Oleum (Rock Solid) Deck Restore,* DECKSTAINHELP.COM (JAN. 2021), https://www.deckstainhelp.com/class-action-lawsuit-against-rust-oleum-deck-restore/ (last visited Feb. 25, 2021).

[19] Linda Lamberson, Comment to *Class Action Lawsuit against Rust-Oleum (Rock Solid) Deck Restore,* DECKSTAINHELP.COM, https://www.deckstainhelp.com/class-action-lawsuit-against-rust-oleum-deck-restore/ (last visited Feb. 24, 2021).

(Restore 4X)

Was Deck Restore 4X Not happy…and this was recoated a second time! **Peeled off within a year.**[20]

---

(Restore 2X)

We used this I believe the first time was 2016. It peeled easily and came off in strips. We contacted the company by email. They sent new product so we tried again which was a lot of time and aggravation. Again, **the product failed**. We contacted the company and received this:

Hello Kevin,
Thank you for sending me the new picturesof the deck. I have reviewed your case with management and here is whatwe can do to assist:

**Option #1: Replacement**
We would be willing to offer you **enough replacement** products so that you could clean, prime and recoat your entire deck with the Rock Solid 6X Deck Coat. We would ship the products directly to you and tint the product to your color. It would take 10 – 14 business days to receive the product via Fed Ex Ground. If you choose this option then I would let you know exactly what we will send you.

**Option #2: Refund**
As you do not have a receipt, we would only be able to do a **general refund or** the original Restore products that you physically have in your possession which would be one gallon of **Restore 2X**. The total general refund amount would be $24.97. If you choose this option then let me know and I will have a refund check issued within 7 – 10 days and you would receive the check via US Mail.

Once you choose to either receive a refund or replacement for the products we would consider the "Satisfaction Guarantee" complete and there would be no future refunds, replacements or warranty claims.

---

[20] Les Schumacher, Comment to *Class Action Lawsuit against Rust-Oleum (Rock Solid) Deck Restore,* DECKSTAINHELP.COM, https://www.deckstainhelp.com/class-action-lawsuit-against-rust-oleum-deck-restore/ (last visited Feb. 25, 2021).

Please let me know if you have any questions.

Sincerely,
Geoff Augello
Rust-Oleum Corporation
Product Support Representative
Ph: 877-815-3258

**SERIOUSLY! WE NOT HAVE SPENT HOURS TRYING TO REMOVE THIS AND WILL NOT USE AGAIN. WE ARE CURRENTLY IN PROCESS OF THIS AND IT IS A HORRIBLE, TIME CONSUMING MESS. USING VACATION TIME TO DO THIS AS WELL. REPLACING ROTTEN BOARDS. MAY END UP SPENDING MUCH MORE AS I CANNOT SEE HOW WE CAN REMOVE ALL OF THIS. WE HAVE A HUGE DECK, STAIRS, AND POOL DECK. THIS COMPANY SHOULD BE HELD ACCOUNTABLE. MY HUSBAND IS RECOVERING FROM CANCER AND INSTEAD OF RESTING, HE IS DOING THIS. UNBELIEVABLE THAT THIS IS STILL ON THE SHELF.[21]**

---

67.     Below are pictures from the internet taken by dissatisfied consumers who applied Restore Products to their decks or other structures, which have been ruined or left in disrepair by the product:

---

[21] Mary Hanne, Comment to *Class Action Lawsuit against Rust-Oleum (Rock Solid) Deck Restore,* DECKSTAINHELP.COM, https://www.deckstainhelp.com/class-action-lawsuit-against-rust-oleum-deck-restore/ (last visited Feb. 25, 2021).



[22] Marge Gawronski, Comment to *Class Action Lawsuit against Rust-Oleum (Rock Solid) Deck Restore,* DECKSTAINHELP.COM, https://www.deckstainhelp.com/class-action-lawsuit-against-rust-oleum-deck-restore/ (last visited Feb. 25, 2021).

[23] Les Schumacher, Comment to *Class Action Lawsuit against Rust-Oleum (Rock Solid) Deck Restore,* DECKSTAINHELP.COM, https://www.deckstainhelp.com/class-action-lawsuit-against-rust-oleum-deck-restore/ (last visited Feb. 25, 2021).



68.     Rust-Oleum's response to consumer complaints about failed Restore Products is to simply to offer a purchase price refund or offer to replace defective Restore Products with more defective products. These offers are unacceptable to consumers, as Rust-Oleum does not compensate consumers for the time they waste applying the Restore Products and attempting to remove the products when they inevitably fail, and the monetary expenses incurred when the defective Restore Products damage consumers' underlying decks and other structures, including the cost to replace deck boards or even full decks.

69.     Rust-Oleum's product literature for its Restore Products identify that "we can guarantee these products only to conform to our standards of quality, and our liability, if any, will

---

[24] June Maybaugh-Stickel, Comment to *Class Action Lawsuit against Rust-Oleum (Rock Solid) Deck Restore,* DECKSTAINHELP.COM, https://www.deckstainhelp.com/class-action-lawsuit-against-rust-oleum-deck-restore/ (last visited Feb. 25, 2021).

be limited to replacement of defective materials."[25] Putting aside that Rust-Oleum does not actually adhere to its purported warranty limitation that its "liability . . . will be limited to replacement of defective materials"—indeed, it offers refunds to some customers—this "exclusive remedy" limitation is unconscionable and fails under U.C.C. § 2-302.

**E.      Plaintiff's Experiences With the Restore Products**

**Plaintiff Nancy Cole**

70.      In or about May 2019, Plaintiff Nancy Cole purchased a five-gallon bucket of Restore 2X from her local Home Depot store. Her and her husband applied the Restore 2X to the deck at her home in Schodack Landing, New York.

71.      Prior to purchasing the Restore Products, she had heard about Rust-Oleum and was aware of the company's supposed reputation for quality. Plaintiff saw advertisements online and in magazines, and observed the product labeling on the Restore 2X container, touting that the product would protect her deck from damage and rot. Plaintiff was particularly drawn to Restore Products' purported qualities, including promises about durability, filling cracks, providing long-lasting results, and being barefoot friendly.

72.      Plaintiff saw the specific representations regarding the qualities and characteristics of Restore 2X on the product container she purchased, namely regarding water repellency and protecting against the elements. She specifically observed the picture on the product cannister that demonstrated water beading up on the deck in the picture, and believed that the product would protect against water and rain-/weather-related damage. Plaintiff relied upon these representations in making a decision to purchase the Restore Products.

73.      Prior to applying the Restore Products, Plaintiff and her husband prepared their deck according to the product instructions. They spent approximately two eight-hour days—16

---

[25] RUST-OLEUM, *Restore 4X Deck Coat,*
https://www.rustoleum.com/~/media/DigitalEncyclopedia/Documents/RustoleumUSA/TDS/English/CBG/Restore/RST-07_Restore_4X_Deck_Coat_TDS.ashx (last visited March 5, 2021).

hours total—working on resurfacing the deck with Restore Products, including time spent preparing the surface and actually applying the Restore Products.

74.     Within approximately six (6) months of applying the Restore Products, and despite proper application, Plaintiff's deck became unsightly and was in a state of disrepair due to the Restore Products failing.

75.     Photographs of Plaintiff's deck coated with failed and degrading Restore Products are shown below:



76.     To date, Plaintiff's deck remains in a state of disrepair, as the Restore Products still crack, chip, strip, and otherwise fail and degrade. Plaintiff called Rust-Oleum to complain about the product failure, and Rust-Oleum failed to extend her any refund, product replacement, or

payment for damages to her deck and lost time. Rust-Oleum has not provided Plaintiff with any remedy or repair relating to her deck and the failed Restore Products.

77.     Despite spending an inordinate amount of time properly preparing the deck, applying the Restore Products, attempting to remove the failed Restore Products Product, and reapplying new Restore Products, Plaintiff will have to replace the deck altogether because the defective Restore Products failed to prevent her deck from decaying, making it unsafe to walk on the deck.

78.     Had Plaintiff known that the Restore Products were not long-lasting, durable and would not fill cracks, and provide the performance advertised, and that the Restore Products are not a quality product suitable for application to decks and other surfaces, she would not have purchased the Restore Products.

79.     As a result of purchasing and applying the Restore Products to her deck, Plaintiff has suffered harm, including out of pocket expenses and unreimbursed labor.

## TOLLING OF APPLICABLE STATUTE OF LIMITATIONS

80.     Plaintiff and members of the Class are within the applicable statute of limitations for the claims presented here. Rust-Oleum has non-public information detailing the propensity of the Restore Products to prematurely degrade, including internal pre-release product testing information, but failed to disclose this information to consumers. Plaintiff and Class members therefore could not reasonably have known that the Restore Products prematurely fail. Rather, consumers relied upon Rust-Oleum's misrepresentations and omissions, including the statements on the product labeling as set forth above. Rust-Oleum intended Plaintiff and consumers to rely upon its marketing misrepresentations and omissions, which they did.

81.     Once Plaintiff incurred damages, Plaintiff promptly acted to preserve all rights, filing this action. Rust-Oleum is estopped from asserting any statute of limitation defense that might otherwise be applicable to the claims asserted herein based upon the discovery rule and due to Rust-Oleum's active concealment of the fact that the Restore Products prematurely degrade and fail.

## CLASS ACTION ALLEGATIONS

82.     Plaintiff brings this lawsuit as a class action under Federal Rule of Civil Procedure 23, on behalf of themselves and all others similarly situated.

83.     Plaintiff seeks to represent the following Nationwide Class:

**Nationwide Class**
All individuals and entities residing in the United States and its territories that have purchased, not for resale, Rust-Oleum Restore Deck Start Wood Primer, Restore 2X, and Restore 4X products.

84.     In the alternative, Plaintiff seeks to represent the following state classes:

**New York Class**
All individuals and entities residing in the state of New York that have purchased, not for resale, Rust-Oleum Restore Deck Start Wood Primer, Restore 2X, and Restore 4X products.

85.     The above defined classes are collectively referred to as the "Class" or "Classes." Plaintiff reserves the right to re-define the Class(es) prior to class certification. Plaintiff reserves the right to modify these class definitions as discovery in this action progresses.

86.     Excluded from the Class are Rust-Oleum, any entity in which Rust-Oleum have a controlling interest or which has a controlling interest in Rust-Oleum, and Rust-Oleum's legal representatives, assigns and successors. Also excluded are the judge(s) to whom this case is assigned and any member of the judge's immediate family.

87.     Class members seek relief under both Rule 23(b)(2) and (b)(3). Specifically, Class members who need to replace decking or patio material and/or repair decks and patios and other surfaces or property seek to have the Court declare any limits on full recovery by the class members to be unenforceable and otherwise null and void. This relief is based solely upon Rust-Oleum's past and current systematic practices and policy of limiting remedies of the Class members, and thus declaratory relief is thus appropriate for the Class as whole. Under Rule 23(b)(3), the central issues for each and every Class member are the same: whether the Restore Products have the propensity to prematurely fail, whether Rust-Oleum acted unlawfully and deceitfully, and whether the Class is entitled to common remedies.

88.     **Numerosity:** The number of persons who are members of the Class is so numerous that joinder of all members in one action is impracticable. The exact number of Class members is unknown. Due to the nature of the trade and commerce involved, as well as the number of complaints by consumers about the problems alleged herein, Plaintiff believes the Class consists of tens of thousands of consumers.

89.     **Commonality and Predominance:** Questions of law and fact that are common to the entire Class predominate over individual questions because the actions of Rust-Oleum complained of herein were generally applicable to the entire Class. These legal and factual questions include, but are not limited to:

- whether Rust-Oleum marketed the Restore Products as a superior, long-lasting, and durable products capable of extending the life of the surfaces to which they are applied;

- whether Rust-Oleum's marketing of the Restore Products was false, deceptive, and/or misleading to reasonable consumers;

- whether the Restore Products are unfit for their ordinary purpose of providing lasting protection to deck and patio surfaces and related structures;

- whether the Restore Products are unfit for their particular purpose of providing protection to deck and patio surfaces from harsh weather conditions and lasting longer than ordinary deck paints or stains;

- whether the Restore Products are defective and susceptible to premature failure;

- whether Rust-Oleum knew or should have known of the defective nature of the Restore Products;

- when Rust-Oleum discovered that the Restore Products are susceptible to premature failure;

- whether Rust-Oleum disclosed knowledge that the Restore Products are susceptible to premature failure;

- whether information about the defective and flawed nature of the Restore Products, and their propensity to fail, was material to consumers;

- whether Rust-Oleum's marketing and advertising representations about the qualities of the Restore Products created warranties;

- **w**hether the Restore Products failed to perform as warranted;

- whether Rust-Oleum breached express and implied warranties;

- whether Rust-Oleum was unjustly enriched by the sale of Restore Products;

- whether any limitations and terms in Rust-Oleum's warranties and any terms and conditions are unconscionable and unenforceable;

- whether, and to what extent, Plaintiff and the Class suffered damages as a result of Rust-Oleum's conduct; and

- whether Defendant should be declared financially responsible for notifying all Class members about the Restore Products' propensity to prematurely fail and for all damages associated with application of the product on Class members' decks, patios, and similar property/structures.

90.    All questions as to the representations and publicly disseminated advertisements and statements attributable to Rust-Oleum at issue herein are similarly common. A determination of Rust-Oleum's knowledge regarding the misleading and deceptive nature of the statements made and alleged herein on websites, brochures, advertisements, commercials, product labels, and warranties will be applicable to all members of the Class. Further, whether Rust-Oleum violated any applicable state laws and pursued the course of conduct complained of herein, acted intentionally or recklessly in engaging in the conduct described herein, and the extent of the appropriate measure of injunctive and declaratory relief, damages, and restitutionary relief are common questions to the Class. Common questions of fact and law outweigh any potential individual ones.

91.    **Typicality**:  Plaintiff's claims are typical of the claims of members of the Class. Plaintiff and all Class members were injured through Rust-Oleum's uniform misconduct and assert

identical claims against Rust-Oleum arising from a uniform course of conduct. Plaintiff, like all members of the Class, has suffered damages associated with the use of defective Restore Products.

92.    **Adequacy of Representation:** Plaintiff's interests are aligned those of the Class(es) Plaintiff seeks to represent, and Plaintiff will fully and adequately represent and protect the interests of the Class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, including complex consumer fraud and product defects litigation. Plaintiff has no interests that are antagonistic, contrary to, or in conflict with those of the Class. The Class's interests are well-represented by Plaintiff and undersigned counsel.

93.    **Superiority:**  A class action is the superior—and only realistic—mechanism to fairly and efficiently adjudicate Plaintiff's and other Class members' claims. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for Class members individually to effectively redress Rust-Oleum's wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

## COUNT I

### DECLARATORY JUDGMENT ACT, 28 U.S.C. §§ 2201, *et seq.*
### (On Behalf of the Nationwide Class)

94.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

95.    There is an actual controversy between Rust-Oleum and Plaintiff concerning, *inter alia*:

   a.    Whether Restore Products are defective thus causing them to fail;

b.      Whether Rust-Oleum knew or should have known of the defects;

c.      Whether Rust-Oleum misrepresented the nature and quality of Restore Products;

d.      Whether Rust-Oleum marketed Restore Products as a superior, longer-lasting alternative to other deck surfacing and resurfacing products that is capable of revitalizing and extending the life of decks and other structures to which the products are applied;

e.      Whether Rust-Oleum's marketing of Restore Products was false, deceptive, and misleading to reasonable consumers;

f.      Whether Rust-Oleum concealed and/or omitted the defective qualities associated with Restore Products;

g.      Whether the Restore Products are unfit for their ordinary purposes;

h.      Whether Rust-Oleum knew that the Restore Products were susceptible to premature failure;

i.      Whether disclosure of the Restore Products' propensity to degrade and fail is material to reasonable consumers;

j.      Whether Rust-Oleum was unjustly enriched by the sale of defective Restore Products;

k.      Whether Rust-Oleum breached express and implied warranties;

l.      Whether any warranty limitations are unconscionable and void;

m.      Whether Rust-Oleum acted fraudulently, deceptively, or in an unfair manner in handling warranty claims;

n.      Whether Plaintiff and members of the Class sustained damages and the proper measure thereof; and

o.      Whether Rust-Oleum should be declared financially responsible for notifying class members about the Restore Products' propensity to fail and for all damage to structures to which the defective products are applied.

96.     Pursuant to 28 U.S.C. §§ 2201, the Court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

97.     Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

98.     Accordingly, Plaintiff seeks a declaration that:

      a.     the Restore Products are defective as set forth herein and cause property damage;

      b.     the defective nature of Restore Products is material;

      c.     Rust-Oleum knew or should have known that the Restore Products are prone to premature failure and cause damage to consumers' property;

      d.     the defective nature of the Restore Products requires disclosure, at Rust-Oleum's expense, to all consumers who purchase(d) them;

      e.     Rust-Oleum's offer of only a refund of purchase price or product replacement as a remedy for defective Restore Products is unconscionable;

      f.     Rust-Oleum's warranties fail of their essential purpose and any purported limitation on Rust-Oleum's warranties are unconscionable; and

      g.     Defendant is required to review and re-audit all prior warranty claims, including those that were denied in part or in whole.

99.     The declaratory relief requested herein will generate common answers that will settle the parties' controversy. There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

## COUNT II

**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Nationwide Class and the New York Class)**

100.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

101.     Defendant made numerous representations regarding the Restore Products on product labeling, in product literature, in stores where the products are sold, and online, as alleged herein, constituting warranties regarding the Restore Products. These include, but are not limited to, the following:

Restore Deck Start Wood Primer

- "simplifies prep & promotes topcoat adhesion";

- "ideal for: wood decks, fences, siding, furniture & more";

- "for use on weathered, worn or previously coated wood decks, docks and exterior wood furniture";

- "works with any solid topcoat"

- "works on weathered & worn wood."

Restore 2X

- "one coat application";

- "algae and mildew resistant";

- "ideal for: wood decks, fences, siding, furniture & more"

- "extends the life of your deck";

- "superior" product;

- "designed to resurface wood decks, docks, concrete patios and walkways";

- "extend[s] the life of deck and patio surfaces";

- "excellent water repellency."

Restore 4X

- "restores the beauty of moderately worn decks & patios";

- "enhanced durability";

- "barefoot friendly";

- "ultimate weather resistance";

- "fills hairline cracks";

- "high build";

- "designed to resurface aged wood and concrete decks, patios, and walkways";

- "high build finish provide[s] slip resistance and can bridge over or fill small cracks, checks, nail holes, or other minor surface defects."

102.   These representations and promises became a part of the basis of the bargain between the parties and created a collective "express warranty" that the Restore Products would conform to Rust-Oleum's affirmations and promises.

103.   Defendant is obligated under the terms of its warranty to repair and/or replace Restore Products sold to Plaintiff as well as to repair and/or replace any structural damages caused by the products.

104.   Defendant has breached the express warranty by supplying Restore Products in a condition that does not satisfy warranty obligations, including because the Restore Products do not conform to Defendant's express warranties, and by failing to compensate Plaintiff for damages caused by the products.

105.   Defendant's conduct described in this complaint constitutes a breach of express warranties under U.C.C. § 2-313.

106.   Plaintiff has complied with all warranty terms, including application instructions. Defendant, after notice of the problems, has failed to comply with the warranty terms.

107.   Any purported limitations in Rust-Oleum's warranty, are procedurally and substantively unconscionable and thus fail under U.C.C. § 2-302. Defendant knew or should have known that the Restore Products were susceptible to premature failure. Defendant had unequal bargaining power and misrepresented the Restore Products' reliability, and any limitations on remedies unreasonably favor Defendant and fail Plaintiff's reasonable expectations for product performance.

108.    Defendant had actual or constructive notice of the breaches of these warranties, and Defendant has failed to cure these breaches.

109.    To the extent privity is required, Defendant was and is in privity with Plaintiff and Class members. Plaintiff has had sufficient direct dealings with Defendant or its authorized dealers of Restore Products, representatives, and agents to establish privity of contract.

110.    Alternatively, Plaintiff and Class members are intended third-party beneficiaries of contracts (including Defendant's implied warranties) between Defendant and its dealers, representatives, and agents; Defendant's advertisements were aimed at Plaintiff and Class members; and Defendant's warranties were written for the benefit of Plaintiff and Class members as end users of Restore Products. Defendant's authorized dealers, representatives, and agents, on the other hand, were not intended to be the ultimate consumers of Restore Products and have no rights under any warranty; these intermediary entities made no changes to the Restore Products, nor made any additions to (and merely adopted) the warranties issued by Defendant. Accordingly, Defendant is estopped from limiting claims for common law and statutory violations based on a defense of lack of privity.

111.    As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and Class members have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial, including repair and replacement costs and damages to decks, patios, and other structures or property.

112.    Defendant had pre-suit notice of the conduct underlying Plaintiff's warranty claims, including through consumer complaints, previous litigation relating to similar Restore Products, a similar lawsuit relating to the same products at issue in this case filed in the United States District Court for the Northern District of Illinois, captioned as *Garrard v. Rust-Oleum Corporation*, 1:20-CV-00612 (N.D. Ill.). Furthermore, on March 8, 2021, Plaintiff sent Defendant a pre-suit demand letter notifying and requesting remedies for Defendant's breaches of warranties.

## COUNT III

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of the Nationwide Class and the New York Class)**

113.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

114.    Pursuant to U.C.C. § 2-314, a warranty that goods are merchantable is implied in a contract for sale of goods if the seller is a merchant with respect to the specific goods.

115.    To be "merchantable", goods must be fit for the ordinary purposes for which such goods are used.

116.    Defendant is a "merchant" with respect to acrylic residential coatings like the Restore Products, as Defendant is in the business of manufacturing, designing, supplying, marketing, advertising, warranting, and/or selling the Restore Products.

117.    Defendant impliedly warranted to Plaintiff and Class members that the Restore Products are of a certain quality, free from defects, fit for the ordinary purpose of resurfacing decks and similar structures, and suitable for providing protection to decks, patios, and other similar structures form harsh weather conditions, and that the Restore Products are long-lasting and a better alternative to using ordinary deck paints and stains or simply replacing a deck.

118.    However, the Restore Products are unfit for ordinary use and are not of merchantable quality as warranted by Defendant at the time of sale because the Restore Products are defective and have the propensity to crack, peel, flake, chip, strip, and generally prematurely fail and degrade. Before purchase, Plaintiff could not have readily discovered that the Restore Products were not merchantable for use as deck resurfacing and restoration products, were not of the same quality as those generally acceptable in the trade, and did not conform to the quality previously represented.

119.    Defendant has not sufficiently (i.e., specifically and conspicuously) disclaimed the implied warranty of merchantability, including any remedy for recovery of labor and costs of labor associated with application and removal of flawed Restore Products.

120.    Defendant has failed to provide adequate remedies under its implied warranties, which have caused the implied warranties to fail their essential purpose, thereby permitting the remedies sought herein under these implied warranties.

121.    Any purported limitations in the Restore Products limited warranty, including limiting the exclusive remedy to a refund or replacement, are procedurally and substantively unconscionable and thus fail under U.C.C. § 2-302.

122.    Defendant knew or should have known that the Restore Products are susceptible to premature failure; Defendant had unequal bargaining power and misrepresented the reliability, quality, performance, and qualities of the Restore Products; and any limitations on remedies unreasonably favor Defendant and fail Plaintiff's and consumers' reasonable expectations for product performance.

123.    Defendant had actual or constructive notice of the breaches of these warranties, and Defendant has failed to cure these breaches.

124.    To the extent privity is required, Defendant was and is in privity with Plaintiff and Class members by law or by fact. Plaintiff has had sufficient direct dealings with Defendant or its authorized dealers of Restore Products, representatives, and agents to establish privity of contract.

125.    Alternatively, Plaintiff and Class members are intended third-party beneficiaries of contracts (including Defendant's implied warranties) between Defendant and its dealers, representatives, and agents; Defendant's advertisements were aimed at Plaintiff and Class members; and Defendant's warranties were written for the benefit of Plaintiff and Class members as end users of Restore Products. Defendant's authorized dealers, representatives, and agents, on the other hand, were not intended to be the ultimate consumers of Restore Products and have no rights under any warranty; these intermediary entities made no changes to the Restore Products, nor made any additions to (and merely adopted) the warranties issued by Defendant. Accordingly, Defendant is estopped from limiting claims for common law and statutory violations based on a defense of lack of privity.

126.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and Class members have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial, including repair and replacement costs and damages to decks, patios, and other structures or property.

### COUNT IV

**BREACH OF THE IMPLIED WARRANTY OF**
**FITNESS FOR A PARTICULAR PURPOSE**
**(On Behalf of the Nationwide Class and the New York Class)**

127.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

128.    Pursuant to U.C.C. § 2-315:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose.

129.    Defendant is in the business of manufacturing, designing, supplying, marketing, advertising, warranting, and selling the Restore Products.

130.    Defendant impliedly warranted to Plaintiff and Class members that the Restore Products are fit for the particular purpose of restoring and revitalizing old or worn decks and other surfaces, thereby obviating the need to replace decks and similar structures. Defendant also impliedly warranted that the Restore Products are fit for the particular purpose of providing protection to decks and other structures from harsh weather conditions, revitalizing and "restoring" old and worn decks, and lasting longer than ordinary deck paints or stains.

131.    The Restore Products uniformly fail to serve their stated purpose. The Restore Products are therefore unfit for their particular purpose.

132.     Specifically, at the time Plaintiff purchased the Restore Products, Defendant knew that the Restore Products are used as an exterior resurfacer and restoration product for decks and related structures subject to certain extreme conditions.

133.     Plaintiff and Class members reasonably relied on the skill and judgment of Defendant—a large corporation in the business of manufacturing, marketing, and selling paints, stains, and coatings—in furnishing a suitable product for this purpose. However, the Restore Products are not suitable for this purpose and were not suitable for this purpose at the point of sale because the Restore Products has the propensity to prematurely fail despite proper application are not durable, and do not last longer than ordinary deck paint or stain, and their performance as products fall well short of Defendant's representations about quality and performance.

134.     Defendant has not sufficiently (i.e., specifically and conspicuously) disclaimed the implied warranty of fitness for a particular purpose, including any remedy for recovery of labor and costs of labor associated with application and removal of the Restore Products.

135.     Defendant has failed to provide adequate remedies under its implied warranties, which have caused the implied warranties to fail their essential purpose, thereby permitting the remedies sought herein under these implied warranties.

136.     Any purported limitations in the Restore Products limited warranty, including limiting the exclusive remedy to a refund or replacement, are procedurally and substantively unconscionable and thus fail under U.C.C. § 2-302. Defendant knew or should have known that the Restore Products are susceptible to premature failure; Defendant had unequal bargaining power and misrepresented the reliability, quality, performance, and qualities of the Restore Products; and any limitations to remedies unreasonably favor Defendant and fail Plaintiff's and consumers' reasonable expectations for product performance.

137.     Defendant had actual or constructive notice of the breaches of these warranties, and Defendant has failed to cure these breaches.

138.     To the extent privity is required, Defendant was and is in privity with Plaintiff and Class members by law or by fact. Plaintiff has had sufficient direct dealings with Defendant or its

authorized dealers of Restore Products, representatives, and agents to establish privity of contract.

139.    Alternatively, Plaintiff and Class members are intended third-party beneficiaries of contracts (including Defendant's implied warranties) between Defendant and its dealers, representatives, and agents; Defendant's advertisements were aimed at Plaintiff and Class members; and Defendant's warranties were written for the benefit of Plaintiff and Class members as end users of Restore Products. Defendant's authorized dealers, representatives, and agents, on the other hand, were not intended to be the ultimate consumers of Restore Products and have no rights under any warranty; these intermediary entities made no changes to the Restore Products, nor made any additions to (and merely adopted) the warranties issued by Defendant. Accordingly, Defendant is estopped from limiting claims for common law and statutory violations based on a defense of lack of privity.

140.    As a direct and proximate result of Defendant's breach of the implied warranty of fitness for a particular purpose, Plaintiff and Class members have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial, including repair and replacement costs and damages to decks, patios, and other structures or property.


## COUNT V

### FRAUD/FRAUDULENT CONCEALMENT
### (On Behalf of the New York Class)

141.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

142.    Defendant misrepresented and concealed or suppressed material facts concerning the performance and quality of the Restore Products. Specifically, Rust-Oleum knew (or should have known) that the Restore Products are prone to premature failure despite proper use and application, which it knew through consumer complaints about the Restore Products; pre-release testing of the Restore Products; and through other litigation that notified Rust-Oleum that its Restore Products are prone to failure. Rust-Oleum knew, at the time it sold Restore Products to Plaintiff and Class members, that its advertising and marketing representations were false.

143.    However, Rust-Oleum failed to disclose this information prior to or at the time they sold the Restore Products to Plaintiff and consumers, which was material to their purchasing decision. Defendant did so in order to boost sales of the Restore Products and profits in general. It also did so because it intended consumers, like Plaintiff, to rely upon its positive product marketing and advertising in deciding to purchase Restore Products.

144.    Plaintiff and Class members had no way of knowing that Defendant's representations were false and gravely misleading, or that Defendant had omitted imperative details about the Restore Products. Plaintiff and Class members did not, and could not, unravel Defendant's deception on their own.

145.    Defendant had a duty to disclose the true performance of the Restore Products because knowledge of the products' premature failure and the details related thereto were known and/or accessible only to Defendant; Defendant had superior knowledge and access to the facts; and Defendant knew the facts were not known to, or reasonably discoverable, by Plaintiff and the Class. Defendant also had a duty to disclose because they made many general affirmative representations about the about the qualities of the Restore Products, constituting misleading half-truths.

146.    On information and belief, Defendant still has not made full and adequate disclosures, and continues to defraud consumers by concealing material information regarding the Restore Products and the performance and quality of the Restore Products.

147.    Plaintiff and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased the Restore Products (or would have paid less for them). The actions of Plaintiff and the Class were justified, and Plaintiff was justified in relying upon Defendant's marketing and advertising lies and omissions in deciding to purchase Restore 4X. Defendant was in exclusive control of the material facts and such facts were not known to the public, Plaintiff, or the Class.

148.     Plaintiff and the Class were uniformly exposed to uniform advertising by Defendant— including but not limited to the advertisements and representations in store locations where Rust-Oleum sold its Restore Products, on websites where Rust-Oleum's Restore Products are sold, and on the Restore Products containers and labeling—before or at the time they purchased the Restore Products. Plaintiff and Class members justifiably relied upon Defendant's representations and omissions regarding the advertised quality and characteristics of the Restore Products in deciding to purchase the Restore Products. Plaintiff and Class members did not know, and had no reason to know, that the Restore Products were defective prior to purchasing them.

149.     Because of the concealment and/or suppression of the facts, Plaintiff and the Class sustained damage because they did not receive the value of the premium price paid for the Restore Products and the benefit of their bargain, in addition to other monetary losses and property damage sustained.

150.     Accordingly, Defendant is liable to Plaintiff and the Class for damages in an amount to be proven at trial.

151.     Defendant's acts were malicious, oppressive, and deliberate, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and well-being to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

## COUNT VI

### NEGLIGENT MISREPRESENTATION
### (On Behalf of the New York Class)

152.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

153.     Defendant manufactured, marketed, advertised, sold, and represented the Restore Products to Plaintiff and Class members as a deck resurfacer and restorative product that is of superior quality, and charged a premium for those products accordingly.

154.    Defendant made numerous material misrepresentations regarding the Restore Products, as alleged herein. Those representations are false and misleading because the Restore Products do not possess these qualities and capabilities, and proper product application actually results in decking and other surfaces requiring greater upkeep and having a shorter lifespan by requiring repairs (or replacement) due to premature failure.

155.    For example, the Restore Products do not achieve or possess any of the following: "work[] on weathered & worn wood"; "simplify[] prep & promote[] topcoat adhesion"; "work[] with any solid topcoat"; require only a "one coat application"; "algae and mildew resistant"; "extends the life of your deck"; a "superior" product; "restore[] the beauty of moderately worn decks & patios"; "enhanced durability"; "ultimate weather resistance"; "barefoot friendly"; "fill[] hairline cracks."

156.    The Restore Products fail to conceal cracks, and proper application results in cracking, peeling, mildew, etc., making surfaces not suitable to walk on barefoot. The products are not durable, do not properly adhere, are not long-lasting, are not superior, and do not allow consumers to "Restore" weathered and worn decks. Rust-Oleum's marketing representations are false and misrepresentations.

157.    At the time of sale, Defendant had actual or constructive notice of the Restore Products' propensity to prematurely fail, including through previous product failures and related litigation, online complaints, in-store complaints, or through complaints made directly to Defendant over the telephone or through its websites. Thus, Defendant either knew its representations about the Restore Products were false or they had no reasonable grounds for believing that their representations were true.

158.    Defendant also failed to disclose, concealed, suppressed and omitted material information concerning the Restore Products, including that the Restore Products are susceptible to cracking, peeling, flaking, chipping, separating, stripping, generally degrading and otherwise prematurely failing, and causing significant damage to the underlying structures to which the Restore Products are applied.

159.     Defendant had a duty to disclose this information as set forth herein. Defendant intended that Plaintiff and Class members rely upon Defendant's material misrepresentations and omissions to purchase the Restore Products, and Plaintiff reasonably relied upon Defendant's false advertising, marketing, and other misrepresentations and omissions in deciding to purchase Restore Products.

160.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been damaged in an amount to be determined at trial, including repair and replacement costs and/or damages to other property.

## COUNT VII

### UNJUST ENRICHMENT
### (On Behalf of the New York Class)

161.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

162.     This claim is pleaded in the alternative to the other claims pleaded herein.

163.     As described herein, Defendant marketed, distributed, and sold the Restore Products as a long-lasting, durable deck resurfacing and restoration product without disclosing the truth about the product, namely that the Restore Products prematurely fail despite proper application.

164.     As the intended and expected result of its conscious wrongdoing, Defendant has profited and benefited from Plaintiff's and Class members' purchase of the Restore Products.

165.     Plaintiff and Class members conferred a benefit upon, and thereby enriched, Defendant in exchange for Restore Products that are flawed, defective, and prematurely fail or degrade.

166.     Defendant has voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Defendant's misconduct, Plaintiff and the Class were not receiving products of the quality, nature, fitness, or value that had been represented by Defendant, and that reasonable consumers expected.

167.    Defendant has been unjustly enriched by its fraudulent and deceptive withholding of benefits to Plaintiff and the Class, at the expense of these parties.

168.    Equity and good conscience militate against permitting Defendant to retain these profits and benefits.

169.    Defendant's ill-gotten gains should be disgorged, and Plaintiff and members of the proposed Class are entitled to restitution of the profits unjustly obtained by Defendant, with interest.

## COUNT VIII

**VIOLATIONS OF THE NEW YORK DECEPTIVE
ACTS AND PRACTICES ACT
N.Y. Gen. Bus. Law § 349 ("GBL")
(On Behalf of the New York Class)**

170.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

171.    Plaintiff Cole and New York Class members are "persons" within the meaning of the GBL. N.Y. Gen. Bus. Law § 349(h).

172.    Rust-Oleum is a "person, firm, corporation or association or agent or employee thereof" within the meaning of the GBL. N.Y. Gen. Bus. Law § 349(b).

173.    Under GBL section 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce" are unlawful.

174.    In the course of Rust-Oleum's business, it failed to disclose and actively concealed that the Restore Products are flawed and prone to premature failure and degradation, while marketing and advertising the products as being of high-quality, durable, long-lasting, and capable of performing as advertised. Defendant did so with the intent that consumers rely on its misrepresentation and concealment in deciding whether to purchase Restore Products.

175.    By intentionally concealing that the Restore Products are flawed, while advertising them as functional, premium products, and fit for their ordinary and intended purpose, Rust-Oleum engaged in deceptive acts or practices in violation of GBL § 349.

176.    Rust-Oleum's deceptive acts or practices were materially misleading. Its conduct was likely to and did deceive reasonable consumers, including Plaintiff Cole, about the true performance and qualities of the Restore Products.

177.    Plaintiff Cole and the New York Class members reasonably relied on Defendant's misrepresentations and omissions of material facts in the purchase of the Restore Products. Plaintiff Cole and New York Class members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendant suppressed. Had Plaintiff and New York Class members known the truth about the Restore Products, they would not have purchased them, or would not have paid as much form them as they did.

178.    Defendant's actions set forth above occurred in the conduct of trade or commerce.

179.    Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest. Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large.

180.    Plaintiff and New York Class members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations. Among other things, Plaintiff and New York Class members overpaid for Restore Products; suffered damages to their decks and other structures; incurred time and labor associated with applying and removing the Restore Products from their decks, and obtaining repairs to their decks and structures due to the damage caused by the Restore Products; and suffered diminution of value of their decks or other structures and the homes to which they are appended. These injuries are the direct and natural consequence of Defendant's material misrepresentations and omissions.

181.    Plaintiff Cole, individually and on behalf of the New York Class, requests that this Court enter such orders or judgments as may be necessary to enjoin Rust-Oleum from continuing its unfair and deceptive practices.

182.    Under the GBL, Plaintiff and New York Class members are entitled to recover their actual damages or $50, whichever is greater. Additionally, because Defendant acted willfully or

knowingly, Plaintiff Cole and New York Class members are entitled to recover three times their actual damages. Plaintiff Cole also is entitled to reasonable attorneys' fees.

## COUNT IX

### VIOLATIONS OF THE NEW YORK GENERAL BUSINESS LAW § 350
### N.Y. Gen. Bus. Law § 350 ("GBL")
### (On Behalf of the New York Class)

183.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

184.    New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]" False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity . . . ." N.Y. Gen. Bus. Law § 350-a.

185.    Rust-Oleum caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements that were untrue or misleading, as alleged herein, and which were known, or which by the exercise of reasonable care should have been known to it, to be untrue and misleading to consumers, including Plaintiff Cole and New York Class members.

186.    Rust-Oleum has violated GBL § 350 because the representations or omissions regarding the flaws in and premature failure of the Restore Products as described above were material and likely to deceive a reasonable consumer.

187.    Plaintiff and New York Class members have suffered injury, including the loss of money or property, as a result of Defendant's false advertising. In purchasing the Restore Products, Plaintiff Cole and Class members relied on the misrepresentations and/or omissions of Rust-Oleum with respect to the quality, functionality, and performance of the Restore Products. Rust-Oleum's representations turned out to be untrue because the Restore Products are prone to premature failure and degradation despite proper use and application. Had Plaintiff and the New York Class

members known this, they would not have purchased their Restore Products and/or paid as much for them.

188.     Accordingly, Plaintiff and New York Class members overpaid for their Restore Products and did not receive the benefit of the bargain.

189.     Plaintiff Cole, individually and on behalf of the New York Class, requests that this Court enter such orders or judgments as may be necessary to enjoin Rust-Oleum from continuing its unfair, unlawful, and deceptive practices. Plaintiff and New York Class members are entitled to recover their actual damages or $50, whichever is greater. Rust-Oleum acted willfully or knowingly, and Plaintiff and New York Class members are entitled to recover three times their actual damages (of up to $10,000 per individual). Plaintiff Cole is also entitled to reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff individually and on behalf of all others similarly situated, pray for relief and judgment to be entered upon Defendant Rust-Oleum Corporation as follows:

A.     Enter an order certifying the proposed class (and subclasses, if applicable), designating Plaintiff and Plaintiff's counsel to represent the proposed class;

B.     Declare that Defendant is financially responsible for notifying all Class members of the problems with the Restore Products alleged herein;

C.     Declare that any limitations on Class members' remedies under any warranties are unconscionable and void;

D.     Declare that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from sales of Restore Products, or order Defendant to make full restitution to Plaintiff and the Class members;

E.     Require Defendant to re-audit and reassess all prior warranty claims regarding Restore Products, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds;

F.      Award economic and compensatory damages on behalf of Plaintiff and the Class members;

G.     Award actual damages, treble damages, and/or any other form of monetary relief provided by law;

H.     Award punitive or exemplary damages, as applicable;

I.      Enter an Order enjoining Defendant from its unlawful conduct, for declaratory relief, all other equitable relief as the Court deems proper;

J.      Award Plaintiff and the Class pre-judgment and post-judgment interest as allowed under the law;

K.     Award Plaintiff and the Class reasonable attorney's fees and costs of suit; and

L.      Award such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims so triable.

DATED: March 9, 2021           Respectfully submitted,

*/s/ Tina Wolfson*
TINA WOLFSON (Bar Roll No. 701806)
*twolfson@ahdootwolfson.com*
CHRISTOPHER STINER (Bar Roll No. 701846)
*cstiner@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505
310.474.9111 (*telephone*)
310.474.8585 (*facsimile*)

ANDREW W. FERICH (*pro hac vice* to be filed)
*aferich@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
310.474.9111 (*telephone*)
310.474.8585 (*facsimile*)

*Attorneys for Plaintiff and Proposed Class*